```
MCD6DANP
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          22 CR 679(NRB)

DANSKE BANK,

           Defendant.

------------------------------x

                                New York, N.Y.
                                December 13, 2022
                                11:45 a.m.
Before:

           HON. NAOMI REICE BUCHWALD,

                           District Judge

                  APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
BY:  SEBASTIAN A. SWETT
    MOLLY MOESER
    PATRICK GUSHUE
    TARA LaMORTE
    Assistant United States Attorneys

SHEARMAN & STERLING LLP
    Attorney for Defendant
BY:  KATHERINE J. STOLLER

SULLIVAN & CROMWELL LLP
    Attorneys for Defendant
BY:  SAMUEL W. SEYMOUR
    SHARON COHEN LEVIN

Also Present:
Jammy Tam, FBI
Anthony Martinez, FBI
Timothy Lucey, FBI

MCD6DANP

1                  (Case called)

2             LAW CLERK:  Is the government present and ready to
3     proceed?

4             MR. SWETT:  Yes, good morning.  This is Sheb Swett on
5     behalf of the United States, joined by AUSA Tara LaMorte, trial
6     attorney Molly Moeser from the Money Laundering and Asset
7     Recovery Section, and trial attorney Patrick Gushue from the
8     Money Laundering and Asset Recovery Section.

9             And we also have with us three agents:  Special agents
10    Anthony Martinez, Timothy Lucey, and Janny Tam from the FBI.

11            THE COURT:  Good morning.

12            LAW CLERK:  Is the defendant present and ready to
13    proceed?

14            MS. STOLLER:  Yes, good morning.

15            Katherine Stoller, Shearman & Sterling for defendant,
16    Danske Bank A/S.  With me at counsel table I have Sam Seymour
17    from Sullivan & Cromwell, and Sharon Levin, Sullivan &
18    Cromwell, and from Danske Bank, we have Neils Heering, who's
19    been the senior general counsel since he joined the bank in May
20    of 2021.

21            THE COURT:  All right.  As I understand it, the
22    purpose of this morning's proceeding is for Danske Bank to
23    enter a plea of guilty pursuant to a plea agreement.  Is that
24    correct?

25            MR. SWETT:  That is correct, your Honor.

MCD6DANP

1   THE COURT: So I think that the first order of
2   business is to establish that Mr. Herring can speak on behalf
3   of Danske bank.
4   So, Mr. Heering, tell me, what your -- actually. Let
5   me swear you in and then we won't have any questions.
6   (Defendant sworn)
7   THE COURT: So tell me your full name, please.
8   THE DEFENDANT: My full name is Neils Thomas Heering.
9   THE COURT: And what is your position at Danske Bank?
10  THE DEFENDANT: I'm the senior general counsel at
11  Danske Bank for the whole group.
12  THE COURT: And are you the individual who is the
13  subject or mentioned in the certificate of corporate
14  resolutions, which is Attachment B to the government's
15  submission?
16  THE DEFENDANT: I am, your Honor.
17  THE COURT: And, Mr. Heering, are you fluent in
18  English?
19  THE DEFENDANT: Yes, I am.
20  THE COURT: Both reading and speaking?
21  THE DEFENDANT: Yes.
22  THE COURT: Tell me about your educational background.
23  THE DEFENDANT: Yes. College, graduated from
24  Copenhagen University, and I also worked in New York with the
25  law firm of Davis, Polk & Wardwell.

1      THE COURT:  I didn't understand the last thing you
2  said.
3      THE DEFENDANT:  I worked for a year with the law firm
4  Davis, Polk & Wardwell here in New York.
5      THE COURT:  All right.  Is there any issue as to
6  whether Mr. Herring is fully authorized to speak on behalf of
7  the bank?
8      MR. SWETT:  No, your Honor.
9      THE COURT:  Mr. Heering, you may sit down.
10     THE DEFENDANT:  Thank you.
11     THE COURT:  So, Mr. Heering, are you currently under
12  the care of a doctor or a mental health professional?
13     THE DEFENDANT:  No, I am not, your Honor.
14     THE COURT:  Okay.  And are you under the influence of
15  any drugs or alcohol today?
16     THE DEFENDANT:  No, no, your Honor.
17     THE COURT:  Are you suffering from jetlag?
18     THE DEFENDANT:  No.  That was a few days ago.  Thank
19  you.
20     THE COURT:  Just thought I'd ask.
21     How are you feeling physically today?
22     THE DEFENDANT:  Sorry?
23     THE COURT:  How are you feeling physically?  Are you
24  okay?
25     THE DEFENDANT:  I'm feeling well.  I had a swim this

1       morning, your Honor.
2               THE COURT:  Did someone give me a signed waiver of
3       indictment?
4               MR. SWETT:  Your Honor, the parties have provided a
5       signed waiver of indictment.  I believe it needs to be
6       witnessed, but otherwise, Mr. Heering and counsel for
7       Danske Bank have signed it.
8               THE COURT:  Okay.  Mr. Heering, have you signed this
9       waiver of indictment?
10              THE DEFENDANT:  I have, your Honor.
11              THE COURT:  And before you signed it, did you discuss
12      it with your lawyers at Sullivan & Cromwell?
13              THE DEFENDANT:  I did.
14              THE COURT:  And Shearman & Sterling.
15              THE DEFENDANT:  Yes, both of them.
16              THE COURT:  And did they explain to you that the bank
17      is under no obligation to waive indictment?
18              THE DEFENDANT:  They did, your Honor.
19              THE COURT:  And did they explain that if you did not
20      waive indictment and the government wanted to prosecute the
21      bank, that they would have to present the case to a grand jury,
22      which might or might not indict the bank?
23              THE DEFENDANT:  They did.
24              THE COURT:  And do you recognize by signing this
25      waiver of document that you have given up your right to have

1  this case presented to a grand jury?
2           THE DEFENDANT:  Yes, I do, your Honor.
3           THE COURT:  And do you understand what a grand jury
4  is?
5           THE DEFENDANT:  Yes, I do.
6           THE COURT:  Have you seen a copy of the information in
7  this case?
8           THE DEFENDANT:  I have, your Honor.
9           THE COURT:  Do you want me to read it out loud, or do
10 you waive its public reading?
11          THE DEFENDANT:  You don't need to do that, your Honor.
12          THE COURT:  And have you had sufficient time to
13 discuss the charges against you and the bank's plea with your
14 counsel?
15          THE DEFENDANT:  I have had that.  Yes, your Honor.
16          THE COURT:  And did you also hand up a signed plea
17 agreement?
18          MR. SWETT:  Yes, your Honor.
19          THE COURT:  Okay.  Someone is keeping this from me.
20          So I have before me now a signed plea agreement,
21 signed by you on behalf of Danske Bank.  Is it correct that you
22 signed that plea agreement based on the corporate resolution
23 marked as Attachment B?
24          THE DEFENDANT:  That is correct, your Honor.
25          THE COURT:  All right.  So Mr. Heering, in order to

determine whether the bank's plea is voluntary and made with a full understanding of the charges against the bank and the consequences of the plea, I'm going to make certain statements to you, and I'm going to ask you certain questions. I want you to understand that I need not accept the plea unless I'm satisfied that the bank is guilty and that the bank fully understands its rights.

At this time, I'd ask the government to recite the charges and the maximum penalties applicable to those charges.

MR. SWETT: Yes, your Honor.

The information charges one count of conspiracy to commit bank fraud. The elements of that count are first that the government would need to establish an unlawful agreement between two or more individuals to commit bank fraud. And in this case, specifically bank fraud defined in Subsection 2 of Section 1344. And the defendant would also need to have knowingly and willfully joined that conspiracy.

The elements of Section 1344, Subsection 2, are the existence of a scheme to obtain the money, funds, or other property under the control of a financial institution by means of material false or fraudulent pretenses with an intent to deceive, and that the financial institution was insured by the FDIC.

Finally, to establish venue, the government would need to prove by a preponderance of the evidence that some act

1     occurred in the Southern District of New York.

2          The maximum penalties for a corporation under
3     18 U.S.C. 1349 are a fine of $1 million, or twice the gross
4     gain or loss to the defendant, a maximum term of probation or
5     supervision of five years, and a special assessment of $400.

6          THE COURT:  All right.  Thank you.

7          Mr. Heering, do you understand that the bank has the
8     right to not plead and the right to go to a trial before a
9     jury?

10         THE DEFENDANT:  I understand that, your Honor.

11         THE COURT:  And do you understand that if the bank did
12    plead not guilty and went to trial, that the burden would be on
13    the government to prove each and every element of the count
14    charged beyond a reasonable doubt in order to convict the bank?

15         THE DEFENDANT:  Yes.  I do understand that, your
16    Honor.

17         THE COURT:  And directing your attention to Paragraphs
18    17 and 18 of the plea agreement, the section entitled the
19    defendant's waiver of rights, including the right to appeal, do
20    you understand that by entering into the plea agreement, that
21    the bank is giving up numerous rights that are recited in
22    Paragraph 17 and 18 of the plea agreement?

23         THE DEFENDANT:  Yes.  I have it in front of me, and
24    yes, I do understand that, your Honor.

25         THE COURT:  And do you understand that in exchange for

the plea agreement and the satisfaction of all of its terms, that the Department of Justice and the U.S. Attorney's Offices have agreed not to file additional criminal charges against the bank or any of its affiliates for the conduct described in the statements of facts and in the information?

THE DEFENDANT:  I do, your Honor.

THE COURT:  And, in fact, is the bank pleading guilty because it is in fact guilty?

THE DEFENDANT:  Yes, that's correct, your Honor.

THE COURT:  Unless I missed it, and I certainly may have, given the volume of paper, I did not notice a *Brady* waiver in the waivers of rights.

MR. SWETT:  Your Honor, there's no *Brady* waiver in the plea agreement.

THE COURT:  Okay.  So I assume that Rule 5(f) is applicable as in all cases?

MR. SWETT:  Yes, your Honor.

THE COURT:  So let me make sure that I put that on the record.

I direct the prosecution to comply with its obligation under *Brady v. Maryland*, and its progeny, to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution.  Possible consequences for noncompliance may include dismissal of

MCD6DANP

individual charges or the entire case, exclusion of evidence and professional discipline or court sanctions on the attorneys responsible.

The Court will enter a written order more fully describing this obligation and the possible consequences of failing to meet it.

Does some part of the prosecution team confirm it understands the obligations and will fulfill them?

MR. SWETT:  Yes.  The prosecution team is aware of its obligations.  Thank you, your Honor.

THE COURT:  All right.  So Mr. Heering, separate and apart from the plea agreement, have any threats or promises been made to you to make the bank plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Again, separate and apart from the plea agreement, have any understandings or promises been made to the bank concerning the sentence it will receive?

THE DEFENDANT:  No, your Honor.

THE COURT:  At Paragraphs 20, I think 21 and 22, the plea agreement contains an agreed-upon sentencing range, including a fine range and forfeiture amount and special damages and a recommended term of probation.  Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  And at Paragraphs 26 through 29 set out

1  the consequences from violating the terms of the plea
2  agreement.
3           THE DEFENDANT: Yeah. I do understand that.
4           THE COURT: Am I correct it is part of the plea
5  agreement that the bank admits and acknowledges the facts in
6  the information and in the statements of facts as being true
7  and correct?
8           THE DEFENDANT: That is also correct, your Honor, yes.
9           THE COURT: Apart from that, is there an intent that
10 Mr. Heering make some sort of oral statement at this point?
11          MS. STOLLER: Yes, your Honor. Mr. Heering is
12 prepared to allocute.
13          THE COURT: Okay. You may proceed.
14          THE DEFENDANT: Thank you very much, your Honor.
15          Danske Bank A/S is headquartered in Copenhagen,
16 Denmark. From 2008 to 2019, Danske Bank operated a branch
17 located in Tallinn, Estonia.
18          Individuals acting on behalf of Danske Bank knowingly
19 and willfully agreed with others to provide three federally
20 insured banks located in the United States with false and
21 misleading material information about the anti-money laundering
22 and compliance controls at Danske Bank's Estonia branch and the
23 high-risk nature of accounts opened or maintained by the
24 Estonia branch for its nonresident customers from approximately
25 2008 to January 2016.

1          As a result of Danske Bank's false and misleading
2   representations, Danske Bank was able to maintain, and in one
3   case, open U.S. dollar accounts with three U.S. banks.
4          Using these accounts, Danske Bank knowingly processed
5   billions of dollars in transactions connected to the Estonia
6   branch's nonresident customer portfolio without sufficient
7   anti-money laundering policies, procedures, or controls in
8   place.
9          Danske Bank processed these transactions through the
10  U.S. financial system, including through at least one
11  correspondent bank account located in the Southern District of
12  New York, in furtherance of this scheme and with the intent to
13  mislead the U.S. banks.
14         Thank you, your Honor.
15         THE COURT:  All right.  I assume that Danske Bank
16  still wishes to plead guilty?
17         THE DEFENDANT:  Yes, your Honor.
18         THE COURT:  Counsel, do you know of any reason
19  Danske Bank should not plead guilty?
20         MS. STOLLER:  I do not, your Honor.
21         THE COURT:  Let me just check with the government as
22  to whether there are any questions that they wish me to ask
23  that I haven't.
24         MR. SWETT:  Your Honor, just a couple of things, if
25  the Court can put on the record.  First, I think it was

1  inherent in the discussion about the plea, but just confirm
2  that Danske Bank understands the rights its giving up if it
3  pleads guilty.
4          THE COURT:  I covered that.  It's in writing and in
5  the covered paragraphs.  Go ahead.
6          MR. SWETT:  And also the parties have provided a
7  signed copy of the preliminary order of forfeiture, and just
8  allocute Mr. Heering on the forfeiture obligations.
9          THE COURT:  Mr. Heering, as counsel just said, I was
10 given a signed copy of a consent preliminary order of
11 forfeiture.  Did you sign that?
12         THE DEFENDANT:  Yes, I did, your Honor.
13         THE COURT:  Before you signed it, did you read it?
14         THE DEFENDANT:  I did read it.  Yes, your Honor.
15         THE COURT:  And are you authorized to sign this
16 pursuant to the same corporate resolution that we talked about
17 before?
18         THE DEFENDANT:  I'm authorized to sign it, yes.
19         THE COURT:  Thank you.  I will sign it now.
20         Anything else, Mr. Swett?
21         MR. SWETT:  The only other thing, your Honor, with
22 respect to the allocution is the government can proffer that
23 the U.S. banks were federally insured.  But other than that,
24 nothing else from the government.
25         THE COURT:  Thank you.  So I think there are only two

1   other possible subjects.  One is whether there's any need for a
2   presentence report in this case.
3            MR. SWETT:  Your Honor, the plea encompasses an
4   agreed-upon sentence.  Our understanding is the bank is
5   prepared to waive the presentence report and proceed to
6   sentencing in a few weeks at the Court's convenience.
7            THE COURT:  Am I correct about that?
8            MS. STOLLER:  Yes.  That's all correct, your Honor.
9            THE COURT:  Okay.  I totally agree.  I can't imagine
10  how this would be advanced by a presentence report.  So agreed.
11           So as far as a sentencing date goes, I was informed
12  you had picked a date, but it doesn't work for the Court.  So,
13  typically, you should ask me first if I'm available.  I know
14  your preferred date was January 4.  I can offer you the 3rd or
15  the 5th.  Do you have --
16           MR. SWETT:  Your Honor, if the parties are available
17  on January 5th.
18           THE COURT:  Okay.  Is 11:00 o'clock in the morning
19  good for you?  Is that a good time for the traveling party?
20           MS. STOLLER:  That works for us, your Honor.
21           THE COURT:  So we'll see you on January 5th at
22  11:00 o'clock.  Okay.
23           Is there anything further at this time?
24           (Counsel confer)
25           MR. SWETT:  Your Honor, could we put on the record

MCD6DANP

1  that the Court accepts the guilty plea?
2           THE COURT:  I'm sorry.  You're absolutely right.
3  Thank you.
4           All right.  The Court is satisfied that the bank
5  understands the nature of the charge against it and the
6  consequences of a plea, that the plea is made voluntarily and
7  knowingly, and that there is a factual basis for it.
8  Accordingly, the Court will accept the bank's plea of guilty.
9  Thanks for reminding me.
10          Okay.
11          MR. SWETT:  Nothing further from the government.
12 Thank you, your Honor.
13          THE COURT:  Mr. Seymour, anything else?
14          MR. SEUMOUR:  Nothing else.
15          THE COURT:  Okay.  It looked like you were moving in
16 your seat.
17          Thank you very much.  Happy New Year.  Happy holidays.
18          (Adjourned)
19
20
21
22
23
24
25